The next matter on our calendar is the United States of America v. Derrick Borden. Council? Good morning, your honors. May it please the court. My name is Bruce Bryan. I represent Mr. Borden. The main issue before the court today is whether Hobbs Act robbery is a crime of violence under the career offender statute or guideline 1B1.2. Isn't the main issue that we first have to address why the waiver shouldn't be enforced? I'm glad to turn to that, Judge Kaplan. There are multiple reasons why that waiver has been surrendered by the government here. First, the government wrote... Did they waive the waiver? They surrendered their right to enforce the waiver, I think is certainly one way, Judge Pooler, of characterizing it. They wrote a letter to the district court, and this was at the time of the 2255 motion, and in very broad language, the government said, and I'll use the exact phrase was they are not enforcing the appellate waiver. Now, I would say the use of the word appellate by its own term means an appeal, and this appeal. The language was very broad. I submit it's unambiguous, but if there is any ambiguity, then it gets construed against the government as is under case law of this court about appellate waivers and ambiguities. But also, I think we have certainly something very much confirming that the government did surrender its right here, and that is this letter was written to the court, and then at the resentencing, there's a pretty extensive discussion about an appeal from this issue of whether the career offender statute was a crime of violence or not. And the district court said explicitly, unambiguously to everyone, the government also, Mr. Borden has a right to appeal. And the government said nothing. And if that was the only thing there might, but you have to put it in the context that the we are not enforcing our right under the appellate waiver. And they gave certain reasons for that. There was a limited letter. In other words, we are not going to enforce this appellate waiver in the particular circumstances of this case. And well, Judge Laurier, I would say that the language was more broad. And the reasons for the government... So this goes to my larger concern with the argument. If because if we were to agree with you, then the government might thereafter not have an incentive to waive the appellate waiver, even in the context of this Davis argument, right, that benefited your client. Well, obviously, the government, you know, if you're talking about Judge Laurier or future cases of... I'm just concerned that, you know, if we go down this rabbit hole that you're suggesting, that will deter the government from, in a very limited way, waiving its right to enforce or appellate waiver. Well, I think when we look at coming back to the facts of this particular case, it was more than the Davis decision that caused the government to decide here not to enforce its waiver. And it's in the letter. What I would say is that, you know, certainly the government can make its decisions as to when to waive or not waive. We have a third aspect of this. And it was dealt by this court recently in the Ojeda decision. And in that decision, it was a question of first impression for this court. And this court framed it quite broadly as the issue being whether the government can partially enforce a waiver of right to appeal. And this court gave certain reasons in that particular case, but the decision was broad. Can there be partial enforcement of an appellate waiver? And this court in Ojeda said, no, a government can't. Now, the court explained its reasoning, but I would submit, first of all, Ojeda is for the blanket proposition that the government cannot partially enforce an appellate waiver, whether if they decide to enforce or surrender its right to enforce, they surrender in total or they say they won't. But to try to retain control when you're partially enforcing or surrendering your right to an appellate waiver, this court has said no. And what I did do is... Well, in that case, in that case, I mean, that's a little bit of a different situation. As I recall that the government there was trying to, in effect, consent to vacature, but without a full resentencing on everything else. And this is, we get into the reasoning, and I'm glad to get into the reasoning of this court and the facts of that case and to argue that we have similar reasons here. But I would say first that this court in Ojeda said as a blanket rule, you can't partially enforce. But if we then take the next step and we say, what are the reasons? And I would say that there are identical reasons. There are similar reasons. One is, as this court in Ojeda had said, the government had consented to something to proceed. And to partially, or at least more than partially, consenting to the enforcement or relinquishment of its right of the appellate waiver. And that was a factor of this court in Ojeda saying, that's another reason why, that's a reason why we're saying the government can't do what it wants to do and retain control here. Another is, just as court's traditional exercise of its jurisdiction over appeals where there is a question about the ambiguity of an appellate waiver. So if we, I submit that the letter was unambiguous. When you say the word appellate waiver, it can't be, they didn't say, we're waiving our right to enforce that part of the appellate waiver, what's in the provision that's called an appellate waiver that deals with bringing a collateral proceeding, a 2255 motion. The government just simply said this blanket statement. Now, Judge Lawyer, if the government could get past Ojeda on this, and Ojeda, I think, represents this principle of you can't partially enforce, but the government could have been explicit here and could have said, we waive our right to, or we only surrender our right to bring the, to prohibit the defendant from bringing the 2255 motion. That would have been narrowly constructed, but here the appellate waiver was an entire provision in the plea agreement. It was, and so when you say that you're waiving your right to enforce. So assume for sake of argument, that they have relinquished the appellate waiver provision and that we can at least review on the merits and assume further that we apply the plain error standard. Doesn't, here, I think that the district court, I don't have in front of me, stated that the career offender designation was not material, here it is, to the sentence. Doesn't that mean he, or shouldn't we construe that as meaning that he didn't suffer any prejudice? Well, and what it goes to, and of course I do argue here that the de nouveau standard of review applies, but turning to plain error standard, where that would, Judge Laurier just goes, what you're asking is whether the appellant has met the prong of plain error review of whether it affects his substantial rights. And here we have a number of, it absolutely did, and there's case law from this court saying that if there is an application of the wrong sentencing guideline range, so if the court erred here, that it should not have been designated a career offender under the guidelines, then there is an application of a wrong guideline sentencing range, then this probability that the court would have imposed a different sentence. Even if it's a lower sentence, that from a non-guideline sentence to even go further, and the reason for that basically is that we have the anchoring effect with guidelines, and it's recognized by this court, by the Supreme Court, there's a tendency not to And then also we have some aspect of this record showing that there was some sympathy by Judge Matsumoto that if it was returned that the court would impose an even lower sentence. And that was, here the judge expressed concern, basically, gee, if I'm wrong, and the Second Circuit sends us back, by the way, obviously clearly the judge thinking that there's a appeal, relying on the government's letter there, and government saying nothing, but a concern that can I remove the career offender designation, and the defense counsel saying, Judge, I believe you have that authority, and if you do, you can go even lower than what you're going to do for him today. And the judge, I would say, and looking at the dialogue there, the judge was sympathetic. It wasn't like, no, this is the lowest I would go. It was actually a positive response, and that's where the judge is saying, yes, he has a right to appeal. In other words, excuse me, Mr. Brian, I take your anchoring point. I understand that. But this is a circumstance where the judge said, even if you take the career offender off, it wouldn't make a material difference. Now, what is the point of the remand? Well, first of all- He got a very good deal. He did. He did. But I think, first of all, I'm looking at what the judge said in totality, Judge Kaplan, and in totality, yes, the judge said that at one point, and said, I think you'll agree. It's good. But then at another point, when there's a discussion about what if this court reverses and sends it back, I submit an implication that the judge would look favorably on a contention that there should be a lower sentence even than that. And then taking that also, though, with the Second Circuit case law and Supreme Court case law, and I think it's Molina-Martinez, which says that regardless of, well, I would regardless of the sentence imposed, there is a reasonable probability. There just is, under the circumstances, when it's the wrong guideline range that I think the Supreme Court said a defendant can, in general, rely on that that fact alone demonstrates affecting a substantial- But Mr. Bryan, sentencing judges are very alert to the significance of the words, no material difference. And when a judge says that, where there's an issue about the guideline range, the judge is, in effect, saying to the Court of Appeals, look, I understand you could view this guideline range differently, but I would impose the same sentence here no matter what. And all the expressions of sympathy are entirely consistent with the judge having given the defendant a very light sentence. Judge Kaplan, I agree and I see your view. I see your view. What I am saying, though, is that there's also enough in this record that there is another side to statements that the court has made, and perhaps the best thing to do is to remand it to let the district court judge. If the judge says, no, I meant I wasn't going to do anything better, then I'm not going to do anything better. The other thing about it, though, too, and if we think about this, there was more concern by the judge below about how much, in reduction of the sentence, there was a concern about the career offender designation itself and the impact that it would have on Mr. Borden. There was great concern about that. And the judge saying, I have paused in doing this. So there is a ramification of what was done below that will have a lifelong effect on Mr. Borden. This is a good time to stop you, Thomas. Time has long expired. I'm sorry. Let's hear from the government. You've retained one minute for rebuttal. Let's hear from the government. Good morning, counsel. So, morning? Yes. Morning, Your Honors. My name is Warren Gleich. I'm an assistant United States attorney in the Eastern District of New York, and I represent the United States. May it please the court. Your Honors, it is undisputed that the appellant has waived his right to appeal the issue that he brings forth in this appeal. The appellant does not argue that the appellant waiver in this case was not made knowingly, voluntarily, or competently. He does not argue that the government has breached. He argues OHEDA. So, can you address that? Yes, Your Honor. Nothing in OHEDA stands for the proposition that the government cannot selectively enforce an appeal as described by the appellant. OHEDA was dealt with a very specific circumstance in which the government, in that case, sought to limit issues on remand that this court wanted a district court to consider. And in that case, this court determined that where the issues were closely linked, and the consideration of those issues could be decided without unwinding the sentence as a whole, the government, in that specific circumstance, would not be allowed to affect the traditional role of this court to control its mandate in the sentencing case. Now, it stands to reason that based on that language, that if the issues, for example, were not closely linked, that indeed the government would be able to limit issues on remand. But in any event, that's not the situation that we have in this case. Here, the government is not seeking to limit any issues on remand. The government is simply seeking to enforce the appellate waiver for which there was a bargain for exchange in the plea agreement between the parties in this case. And it is of no moment that the government chose not to enforce that appellate waiver with respect to a 2255 petition on a completely separate issue, because the government now, there is no right, there is no bargain for exchange in which the government came to some sort of agreement with the defendant not to enforce the plea agreement now. And in fact, there is some precedence for this court allowing the government to enforce a plea agreement after having determined that it would not enforce a plea agreement in a 2255 petition. We cited the case of United States v. Wall for that proposition, cited in our brief. In that case, we dealt with the exact same scenario in the sense that the government chose not to enforce the appellate waiver with respect to a 2255 petition, but thereafter chose to enforce an appellate waiver with respect to the direct appeal in the case. And this court in that case determined that the appellate waiver was in fact still operable, even though the government did not seek to enforce that waiver in the 2255 petition. So, just as this court enforced the appellate waiver in Wall, this court should similarly enforce the appellate waiver in this case as well. So, the other arguments that the defendant has, the appellant has made with respect to why the appellate waiver should not be enforced simply lack merit. There's no basis simply because the government stated it would not enforce the appellate waiver with respect to one issue, that the government has relinquished its right to ever enforce that appellate waiver thereafter. The government does not concede that there is any ambiguity whatsoever in that when it chose not to enforce that appellate waiver with respect to the 2255 petition. It said so in answer to the 2255 petition, not with respect to any other petition that was before the court at that time. Um, so there's no right that was conferred upon the defendant by the government writing that letter. Um, and certainly simply because the district judge stated that the defendant had a right to appeal, did not confer any right upon the defendant to now. Although the defendant certainly can rely on that when the district judge says you have a right to appeal, it's not worth nothing, is it? Certainly, certainly the district judge is not incorrect when the judge states that a, uh, an appellant has the right to appeal any, uh, in any case. The question is whether this court will enforce an appellate waiver because it is not the district court's decision whether or not to enforce an appellate waiver. It's for this court to make that determination. And the district court is correct in advising any defendant in any case that they do have a right to an appeal. Um, if they, if, if, if this court determines that that appellate waiver is not enforceable, that's a, that's a separate matter than the district judge simply advising, uh, the court that he has that right to appeal. And, and Mr. Gleick, isn't there case law in, in this court to the effect that a statement by a district court that an order, which in fact is non-appealable, uh, or where an appellate right has been waived and there's no issue about the validity of the waiver, can't confer jurisdiction on the court of appeals by a mistaken comment like that. Correct. And that is, that is precise. Their argument that there is that a district judge cannot mistakenly confer a right upon an appellant, uh, simply by stating something, um, um, to an appellant at a time. It's for this court to make that determination. And that's the Fisher case, isn't it? Um, I, I don't have that Moving on, even if we were to, um, uh, allow this case to proceed past the appellant waiver, the appellant simply cannot show under a plain error standard that there was any, uh, prejudice whatsoever to the appellant, um, based upon the, uh, uh, uh, decision in this case. Um, the district court made a very thorough and complete record explaining her rationale for the sentence imposed. Um, the, uh, uh, court discussed principles related to deterrence, rehabilitation. The district judge talked about the family support that the appellant had the, uh, uh, the fact that he had a job waiting for him. The court went through pages of transcripts outlining all of the reasons why, according to the 3553 factors, she felt that the sentence that she imposed was warranted. And the sentence that she imposed ultimately was a 60 month sentence, which significantly allowed for the appellant to be immediately released from confinement. So even if this court, if this case was remanded back to district court, it would have no practical effect whatsoever on the, uh, uh, defendant serving any more or less time in confinement because he was released. But the other piece, and this was mentioned earlier, is that prior to making that very lengthy and thorough analysis explaining her rationale for the sentence, the district judge, uh, explained that it, it made no material difference in the offender or not. And it, the, the judge, uh, certainly, um, proved that by, by giving a sentence that was substantially below the guidelines range for what, uh, what would have been in place for a career offender. So for, for all of those reasons, the, uh, uh, government submits that, that even if we got past the issue of an appellant waiver there, the, the appellant cannot meet the burden of showing a reasonable probability that the sentence would have been any different absent the error. Um, so I, I see my time is coming to a close. So unless there are further questions from the court, uh, we'll rely upon our brief for the Is that right? Is that, that is no precedential opinion. Is that correct? Um, I have not seen another opinion specifically addressing the issue, but I think that simply viewing, I don't, I do not believe that Ojeda, um, states what the, uh, appellant council states. I may agree with you, but it's just, I didn't see a precedential opinion that quite addresses the, uh, uh, arguments that are being made here by the appellant. Okay. Thank you, counsel. Um, Brian, you've returned one minute for rebuttal. Thank you. In talking about whether this would make a material difference on what, uh, occurred. I don't think that there is any question that the main concern of the judge when it dealt with the sentence, uh, it was the designation as a career offender and the effect that it would have on him going forward, which is lifelong. Hopefully he never becomes involved in the criminal justice system again. The court expressed hope in that, but if it did, it would have an adverse effect. So we can't simply look at this from what is the length of term of imprisonment. Second, uh, the, uh, Judge Kaplan, you mentioned that at sentencing, and it's always done in the end, even if a defendant has waived his or her right to appeal, judge will say you have a right to appeal. But that didn't happen. That's not what happened here. This was during the course of the judge's decision that he was a career offender and the judge saying he has a right to appeal that. Does he not have a right to appeal? In other words, isn't, isn't whether the, uh, uh, he is, um, uh, uh, foreclosed from appealing ultimately, isn't that up to us as a court of appeals? Yes. Although what I would say, Judge Laurier, is that, uh, reading in context, what the judge was referring to, the judge I submit was referring to the government's letter. Where, where does the judge get a statement like that from, but for the, the government's letter to it, that he had a right, uh, the government had surrendered his right to bring an appeal. And, and that is what the judge was referring to. You know, what, what, what I think about when you answer in this way is that if Judge Matsumoto had said, you do not have a right to appeal, uh, you'd be, uh, more upset. Uh, I, I'm not sure I would. I mean, I'm just thinking, thinking out loud, Judge, I, I would be thinking you're right. If I thought there was a solid waiver and there was no, uh, argument as to, uh, but one thing I, and the last thing that I think I'd like to say here is that, you know, there's a lot of case law of the court that deals with ambiguous, um, waiver provisions. And if it's ambiguous, it should be construed against the government as the drafter of the agreement, as having unequal bargaining power, that sort of thing. I did not come across any case law saying, okay, but what about, uh, when the government says language that it is not, or it's surrendering its right to enforce the appeal waiver. And my argument is that the same concerns that go into why you would construe against the government an ambiguity in the context of how they drafted the plea agreement, the waiver provision, those same concerns apply to the language it uses when it surrenders its right to enforce the waiver provision. And here, what I say is first, I say it's unambiguous. They use the pellet waiver as language, but if we say it's, uh, it's ambiguous. And here I submit, we have a district court judge who construed it the way I'm saying that then, uh, the ambiguity in as, as far as whether they surrendered their right to enforcement should be construed against the government. And therefore the appeal should go forward. Mr. Bryan, was there any discussion during the sentencing proceeding about the government's waiver at all? That I recall. Okay. Now the government consented to hearing the 2255 some considerable period before the sentencing took place, right? Yes, to a degree, but also I would say, I'm sorry, go ahead. So the logical way, whatever the import of it is, to read the government's reference, I withdraw it. I won't go down this hole. Okay. Thank you. Thank you. Thank you, Mr. Bryan. That concludes argument. I will ask the, uh, clerk, uh, to adjourn court. Court stands adjourned.